NORMAN S. HAYES, DEFENDANT IN ERROR, v. ADAMS EXPRESS COMPANY, PLAINTIFF IN ERROR.

Argued June 29, 1906—Decided March 4, 1907.

1. Mere knowledge by a shipper that a carrier's rates are based upon the value of the goods shipped will not lessen the liability of the carrier to answer for the value of the goods in the absence of the shipper's assent to such a restriction.

2. Where the trial judge instructed the jury that the sole question for their determination was whether plaintiff knew that defendant's rates depended upon the value of the goods; if yes, the verdict should only be for $50; if no, the verdict should be for $300, the value of the goods, and the jury rendered a verdict for the smaller sum—*Held*, that the verdict could not be supported as against plaintiff on the theory that he had voluntarily accepted as a contract a bill of lading stating in effect that the value of the goods did not exceed $50, it being disputable, under the evidence, whether he did assent to such contract, and this question not having been submitted to the jury.

On error to the Supreme Court, whose opinion is reported. in 44 *Vroom* 105.

For the plaintiff in error, *McCarter & English.*

For the defendant in error, *Samuel Koestler* and *Patrick H. Gilhooly.*

The opinion of the court was delivered by

Pitney, J. Plaintiff sued in a District Court to recover $300, the alleged value of a drop curtain received by the de-

fendant from him for carriage from the city of Elizabeth, in this state, to Syracuse, in the State of New York. The state of demand contains two counts, one of which relics for recovery upon the negligence of the defendant resulting in the total loss of the drop curtain. The other count relics upon the common-law liability of the defendant as a carrier, for failure to deliver the curtain.

Upon the trial it appeared that when the curtain was ready for shipment, notice to this effect was in some way communicated to the local office of the defendant company in Elizabeth, and that one of the company's drivers, Bragga by name, went to the place of business of the plaintiff to get it. He found there one Dudley, an employe of the plaintiff, and from him received the curtain, and to him gave a receipt or bill of lading therefor. There was no conversation between Dudley and Bragga in regard to the shipment, nor any mention of the value of the goods shipped. Dudley received the receipt without objection, but did not pay the shipping charges, nor agree with Bragga respecting the amount thereof. The paper contained in print certain terms and conditions, to which the shipper was therein declared to agree, and among them was one to the effect that the company's charge was based upon the value of the property, which must be declared by the shipper, and that if no value of the goods was declared, the value was agreed to be no more than $50. Later in the same day the plaintiff (without knowledge, so far as appears, of the receipt given by Bragga to Dudley) called at the office of the express company, paid the charges ($2), and received a receipt for the money. Dudley testified that the receipt given to him by Bragga was delivered to the plaintiff about ten days later; that on previous occasions he had frequently attended to the shipment of goods by the Adams Express Company for the plaintiff, and had personally shipped as many as thirty or forty packages himself; that in every case a receipt had been given to him by the company's driver similar to that which had been delivered on the occasion of the shipment in controversy; that on six different occasions he had been asked by the driver to state the value of the

goods, and had informed the driver of the wagon that he did not know the value, and had nothing to do with that part of the business; that Mr. Hayes always attended to the payment of the charges at the express company's office. Plaintiff himself testified that Dudley was employed by him as an artist, and in no other capacity, and had never been authorized to make any contract in connection with his business, nor instructed to ship goods by express under limited liability. Both plaintiff and Dudley testified that prior to the shipment in question they had no knowledge that the charges of the express company were based upon the value of the goods to be shipped, nor any knowledge of the terms of the special contract embodied in the receipts customarily used by the company. There was also evidence that the curtain had never reached destination, and that its value was approximately $300.

On the part of the defence there was evidence tending to show that plaintiff knew that the company's charges were customarily based upon the value of the goods to be shipped; that a stipulation to this effect was customarily embodied in the receipts or bills of lading delivered by the company to shippers, and that signs were conspicuously displayed in the office of the company in Elizabeth reading as follows: "Notice to shippers. Please declare the value of your shipment. The company's charge is based on the declared value."

In this state of the proofs the trial judge instructed the jury that the only controversy was whether the plaintiff knew that the defendant's rates depended on the value of the goods. If he did, the verdict in his favor should be for $50 only. But if he had no reason to know that the rate depended on value, then the verdict should be for $300. Under these instructions the jury rendered a verdict in favor of the plaintiff for $50, and upon his appeal to the Supreme Court, the consequent judgment was reversed and the cause ordered to be remitted to the District Court for a new trial.

The present writ of error brings this judgment of reversal under review.

The question intended to be raised by the learned counsel

for plaintiff in error is thus stated in the printed argument: "Is a shipper, who knows that the carrier's rates depend on the value of the article shipped, and who voluntarily accepts a bill of lading stating that the value does not exceed a given amount, bound by the terms of his contract?"

It will be perceived at once that if a shipper does give his voluntary assent to a contract, embodied in a bill of lading, importing a limitation of liability with respect to the value of the goods shipped, it is of little consequence whether he have notice of a custom on the part of the carrier to regulate the rates in accordance with the value of the goods.

Counsel for the plaintiff in error do not dispute the general principle laid down by the Supreme Court in the present case, and declared by this court in *Russell* v. *Erie Railroad Co.,* 41 *Vroom* 808, that in order to lessen the responsibility of a common carrier it must appear that the shipper assented to the restriction, and that mere notice to him of a customary practice on the part of the carrier to insist upon such restriction will not bind the shipper. The argument for reversal rests upon the insistment that in the present case the shipper voluntarily accepted as a contract a bill of lading stating, in effect, that the value of the goods did not exceed $50, and is therefore bound by that limitation. But the practical difficulty is that while, as pointed out in the opinion of the Supreme Court, there was evidence from which the jury might have inferred that plaintiff knew and assented to the limitation of value as set forth in the bill of lading, the evidence upon this point was disputed, and the question was not at all submitted to the jury's determination. Whether Dudley accepted the bill of lading as a contract limiting the common-law liability of the defendant was in dispute. Whether he had actual or even apparent authority to bind the plaintiff by such a limitation was disputed, and with such success that the trial judge instructed the jury that Dudley was not shown to have had any authority to make special terms. And finally, whether, if Dudley did assume, without authority, to make special terms, the plaintiff, with knowledge of the facts, ratified his action in the matter, was in dispute. It is therefore

impossible to sustain the judgment of the District Court upon the theory that the jury found that the plaintiff had voluntarily accepted the bill of lading in question as a contract binding him to a limitation of the carrier's liability with respect to the value of the goods. No verdict has been rendered against the plaintiff on such an issue, it being excluded from the jury's consideration by the instruction of the trial judge that the only question for determination was whether the plaintiff knew that defendant's rates depended upon the value of the goods; if yes, the verdict should be for only $50; if no, the verdict should be for $300. For all that appears, the verdict against the plaintiff upon the question of damages may have been based upon his mere knowledge of the placards displayed in the company's local office, reading: "Notice to shippers. Please declare the value of your shipment. The company's charge is based on the declared value."

In *Fielders* v. *North Jersey Street Railway Co., 38 Vroom* 76; 39 *Id.* 343, plaintiff was injured through a defect in a street pavement shortly after she had alighted from defendant's street car. In the trial court she sought to charge the defendant with negligence (*a*) with respect to the duty owing to her as a passenger, in that she had been permitted to alight at a dangerous place; (*b*) with respect to the duty owing to her as a traveler upon the street, in that the defendant had failed to repair the defect in the pavement. The trial court excluded from the jury's consideration the first of these two questions on the ground that the evidence showed that at the time of her injury the plaintiff was no longer in the position of a passenger, but was a mere traveler upon the street. The Supreme Court, on review, sustained the judgment in plaintiff's favor on the ground (in part, at least) of her rights as a car passenger. But this court reversed, holding that as no verdict had been rendered against the defendant for neglect of any duty that it owed to the defendant as a passenger, the judgment could not be sustained on the theory that the evidence would have warranted such a verdict.

If the present record had disclosed a special verdict finding that the plaintiff made the shipment with notice of de-

fendant's general practice to base their charges upon declared values, it would not be seriously contended that this verdict would justify a judgment adverse to the plaintiff upon the question of damages. Neither would it afford a basis for limiting the damages to precisely $50 rather than to any other specific sum.

Having come to the conclusion that the judgment of the Supreme Court awarding a *venire de novo* must be affirmed, it becomes unnecessary to consider the contention of the defendant in error (plaintiff below) to the effect that there was evidence in the trial court tending to show that the goods in question were lost by the negligence of the carrier, and justifying a verdict for the plaintiff to the full value of the goods on the ground that the limitation of liability, with respect to value, does not extend to losses due to the carrier's negligence. In *Russell* v. *Erie Railroad Co.,* 41 *Vroom* 808, the limitation of the carrier's liability by a special contract was not extended to apply to losses resulting from the carrier's negligence, and in *Paul* v. *Pennsylvania Railroad Co., Id.* 442, our Supreme Court held that a carrier cannot by special contract secure exemption from the consequences of its own negligence. In the present case the delivery of the goods to the carrier and the failure to deliver them at destination appear to have been undisputed at the trial. It is contended that this state of facts raises a presumption of negligence on the part of the carrier, and imposes upon it the burden of showing the contrary. *Jackson* v. *McDonald, Id.* 594; 3 *Am. & Eng. Encycl. L.* (2d ed.) 750; 6 *Encycl. Pr. & Pr.* 523; 5 *Thomp. Negl.,* § 6600. Any expression of our view upon this point should be reserved until the occasion requires it.

The judgment of the Supreme Court should be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, FORT, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J.    10.

*For reversal*—THE CHIEF JUSTICE, REED, TRENCHARD, GRAY, J.J.    4.