FRANK HILL, TO THE USE OF MARY A. FERRIS, DEFEND-
ANT IN CERTIORARI, v. ADAMS EXPRESS COMPANY,
PROSECUTOR.

Argued June 3, 1908—Decided December 21, 1908.

1. A transcript of the stenographic report of the proceedings and testimony certified by the judge of the District Court under chapter 138 of the laws of 1905 (*p.* 259), although not transmitted to the clerk of the Supreme Court within fifteen days by the party suing out a writ of *certiorari*, may be treated as part of the return to such writ when the defendant in *certiorari* has made no objection to such state of the case under the thirty-second rule of this court, and no preliminary motion to strike out such part of the return has been made.

2. A box to be shipped by Adams Express Company to Ireland was called for at the residence of the shipper by a driver of a local transfer company and delivered by him to the express company with a prepayment of the charges, nothing being asked or said as to valuation. The receipt that was handed to the driver of the transfer company by the express company was delivered by him to the shipper two days later, at which time the box, while in the

possession of the express company, had already been destroyed by fire. In an action brought by the shipper against the express company for the value of the box—*Held*, that a motion to nonsuit was properly denied and that a request that the plaintiff's recovery be limited to $50 pursuant to a provision in the express receipt was properly refused.

3. Where a shipper employs a common carrier (in this case the Union Transfer Company) to carry goods to an express office (in this case Adams Express Company) for shipment, the driver of the wagon of the local carrier who delivers the goods to the express company is not a servant or agent of the shipper with whom the express company may make a special contract binding the shipper in the event of loss to a limitation of such carrier's common-law liability.

4. Where the adjustment of a claim of loss against an express company was referred by its main office in New York to the general manager of its Philadelphia office who took the matter up with a representative of the plaintiff, the relevant declarations made by such general manager in the course of such negotiations and germane to the matter in hand are admissible in evidence against the express company in an action between the same parties growing out of the same transaction.

On *certiorari*.

Before Justices Garrison, Swayze and Parker.

For the prosecutor, *Gaskill & Gaskill*.

For the defendant, *Joseph Beck Tyler*.

The opinion of the court was delivered by

Garrison, J.   This writ of *certiorari* brings up a judgment of the District Court of the city of Camden.

A preliminary question is whether there is any return to this writ upon which the prosecutor may rely in support of his reasons for reversal.   The return, apart from the judgment record, consists of a transcript of the stenographic report of the proceedings and testimony certified by the judge of the District Court pursuant to chapter 138 of the laws of 1905 (*p.* 259).   This act requires that such certified transcript "shall be transmitted by the party suing out the writ of *cer-*

*tiorari* to the clerk of the Supreme Court within fifteen days from the rendition of the judgment."

In the present case this was not done and counsel for the defendant in *certiorari* contends that such transcript should on this account be rejected. Rule 32 of this court, however, provides that a state of the case not objected to within five days after its service shall be deemed to be complete. We shall therefore take the statutory return in this case, in so far as it bears upon the legal merits, without considering certain questions concerning it that would have arisen if timely objection had been interposed or a preliminary motion to strike out such return had been made.

We are thus brought to the merits of the present controversy.

The plaintiff's action was brought in the District Court to recover damages for the loss of a box delivered to the Union Transfer Company to be carried to the defendant's local office for shipment by express to Ireland. The case, which was tried without a jury, resulted in a judgment for the plaintiff for $300.

The prosecutor's first reason for reversal is that a motion to nonsuit made at the close of the case should have been granted. (The defendant offered no testimony.)

Upon the review of the ruling of the trial court upon this motion the plaintiff's case was that on March 25th, 1904, she engaged the Union Transfer Company to take a box from her residence in Camden to the local office of the Adams Express Company for shipment by that company to Ireland; that a driver of one of the wagons of the transfer company called at the house of Miss Ferris (the owner of the box and the substantial plaintiff) and there got the box and carried it to the office of the transfer company, where it was marked with an address given by Miss Ferris, after which the same driver delivered the box to the defendant at its local office in Camden, prepaying the express charges demanded and receiving a receipt which he took to the office of the transfer company, where he was told to deliver it to Miss Ferris, which he did two days later, at which time the box had already been de-

stroyed by a fire that occurred at the terminal office of the defendant at New York or Hoboken. At no time was anything asked or said by anyone as to the value of the box.

The mere statement of the plaintiff's case makes it too clear for argument that the motion to nonsuit could not have been granted.

The next reason for reversal is the refusal of the District Court to limit the plaintiff's recovery to the sum of $50. This reason is founded upon a clause in the express receipt handed by the defendant to the driver of the transfer company, which stated that the rate charged was based upon "a valuation of not exceeding fifty dollars unless a greater value is declared," and that "the shipper agrees that the value of said property is not more than fifty dollars unless a greater value is stated herein and the company shall not be liable in any event for more than the value so stated nor for more than fifty dollars if no value is stated herein."

That a carrier may thus limit its common-law liability by a special contract with the shipper is established in this state, with the proviso that the burden of proving that the shipper actually made such a contract is on the carrier. *Russell* v. *Erie Railroad Co.,* 41 *Vroom* 808.

The validity of such contracts does not rest upon the right of the carrier to bargain for an exemption from the results of its own negligence, but upon its rights to stipulate with the shipper as to the value of the latter's property and to predicate upon such valuation both the rate of carriage to be charged the shipper and the amount of the carrier's liability in the event of loss. *Atkinson* v. *New York Transfer Co.,* 47 *Vroom* 608.

This case also decided that where the shipper knows that the rate he is being charged is based upon an undervaluation of his property his silence is tantamount to his assent that such valuation shall be the amount for which the carrier shall be liable in the event of loss. In order to determine whether a given case comes within this rule the crucial question is: When may the shipper be said to know that the rate that he is being charged is based upon an undervaluation of his prop-

erty? This question being one of fact is, from its nature, incapable of being answered by any mere formula; each case must in a measure rest upon its own circumstances. There is, however, in a very large proportion of cases a matter *in limine* that is of prime importance in the solution of this question, viz., whether the delivery to the shipper of a partly written and partly printed receipt or voucher which contains the terms of a special contract based upon a valuation placed on such property in such receipt becomes in the event of loss an executed contract by which the shipper is bound if he received such document without indicating his dissent to this feature of it. Speaking of such instruments, Chief Justice Gummere, in the case last cited, which was a Court of Errors and Appeals decision, said: "It is insisted on behalf of the plaintiff in error that Mrs. Atkinson by receiving the bill of lading became bound by its provisions; that the mere acceptance of this paper, without any indication of dissent from its terms, bound her as fully as if she had expressly assented to them, and that she could not afterward deprive the plaintiff in error of the protection of its provisions by asserting that she was ignorant of its contents. We are not required to pass upon the soundness of this proposition."

The question was therefore not decided in the case from which we have quoted. The same court, however, in *Hayes* v. *Adams Express Co.*, 45 *Vroom* 537, speaking through Mr. Justice (now Chancellor) Pitney, had already decided that "mere knowledge by a shipper that a carrier's rates are based upon the value of the goods shipped will not lessen the liability of the carrier to answer for the value of the goods in the absence of the shipper's assent to such a restriction."

It will be observed that the decision was not that such result might not follow the shipper's knowledge that the rate he was being charged was based upon a valuation stated in a receipt that was delivered to him.

There is therefore no conflict between the two decisions, although neither of them passed upon the question we have propounded, which now calls for our decision only in case the driver of the transfer company had authority from Miss Ferris

to give or to withhold her assent to the valuation placed upon her property in the receipt that was handed to such driver when he delivered her box to the express company.

If the driver had such authority from the shipper it must have arisen as a fiction of law from the mere fact of her employment of the transfer company to deliver her box to the express company and to prepay the charges demanded, for she did nothing else to constitute the servant of the transfer company her special agent. Such fiction, however, by which the servant of a common carrier (in this case the transfer company) is by mere operation of law transferred to the service of whomsoever contracts with such carrier, not only does violence to all our preconceived notions touching the relation of master and servant, but seems to lead to the absurd result that one who thus contracts forfeits thereby all right of recovery against such common carrier for losses arising out of the negligence of one of its servants, for by force of the fiction in question such servant of the carrier becomes *pro hac vice* the servant of the carrier's customer, and no one can recover damages for a loss occasioned by the negligence of his own servant.

But not only is the fiction in question thus out of harmony with the general law of master and servant, it also runs counter to more than one of the established doctrines respecting that relationship, such, for instance, as the independent contractor doctrine, under which agency cannot be traced through an independent actor, and the fellow-servant doctrine, under which the relation of master and servant cannot be changed without the consent of the servant. It is also repugnant to the doctrine upon which the courts of this state based their repudiation of the rule laid down in Thorogood *v.* Bryan. Inasmuch as Thorogood *v.* Bryan concerned the imputation of negligence the grounds of its repudiation may seem to be lacking in application to the question of the imputation of agency, but identity of principle is of more importance than mere analogy, and in principle the two classes of cases are not only similar but the principle involved is even more appropriate to cases of contract than to those where con-

duct merely is concerned. This will appear from a statement of the case cited and of the grounds of its repudiation. *Thorogood* v. *Bryan,* 8 *Man., G. & S.* 116, had held that where the negligence of the driver of an omnibus contributed to a collision with another vehicle by which a passenger in the omnibus was killed the representative of such deceased passenger could not recover from the proprietor of such other vehicle damages for its negligent management for the reason that the driver of the omnibus was so identified with the passenger he was carrying as to be in legal effect his servant. By force of this doctrine the negligence of the driver of the omnibus was imputed as contributory negligence to his fictional master, to wit, his passenger.

This doctrine was emphatically repudiated in our Supreme Court in *Bennett* v. *New Jersey Railroad and Transportation Co., 7 Vroom* 225, and in the Court of Errors and Appeals in *New York, Lake Erie and Western Railroad Co.* v. *Steinbrenner,* 18 *Id.* 161, in opinions demonstrating its inconsistency with established principles of law, which are of equal cogency upon the question we are now considering. The same result was reached in the Supreme Court of the United States in *Little* v. *Hackett,* 116 *U. S.* 366, in which Mr. Justice Field characterized the opinions delivered by Chief Justice Beasley and Mr. Justice Depue in the two New Jersey cases as "of marked ability and learning." The fact is that Thorogood *v.* Bryan has been quite generally discredited both in this country and in England, and in all the courts in which it has been repudiated stress has been laid upon the passenger's lack of control over the driver as the test to be applied in such cases.

Upon principle I am unable to distinguish between a passenger's lack of control over the driver of a conveyance in which he is riding and the customer's lack of control over the driver of a transfer wagon in which his property is being carried. In point of law their impotence is the same, while in point of fact such impotence is greater in the latter case than in the former, for the passenger being present may and often does exert some influence over the conduct of the driver of the

conveyance, but in the case of the transportation of goods the owner does not accompany his property and hence has no opportunity whatever to exercise the slightest control over the carrier's servant. Obviously the rule of our cases forbids the imputation of agency in cases such as that now before us.

I am aware that there is a line of decisions whose soundness need not now be questioned, of which *Nelson* v. *Hudson River Railroad Co., 48 N. Y. 498,* may be taken as the type, which hold that the agreement or arrangement between two persons touching the shipment of goods may be such that the owner of the goods is bound by the terms of their shipment if assented to on his behalf by the servant of his agent or representative. And inasmuch as this doctrine was referred to *arguendo* by Judge Vroom in his opinion in the Russell case, it may be well to point out that the decision of that case was placed solely upon the narrow point that the servant of the shipper's agent carried to the shipping office a completely made out shipping order that definitely marked the limits of his authority, hence the question as to what his authority would have been but for such limitation was not a matter of decision in that case.

Assuming, however, the correctness of the decisions referred to they are clearly distinguishable from the present case, not only by reason of the wide difference that exists between instructions given to a personal agent to cause goods to be shipped and the mere employment of a common carrier to carry goods to a shipping office, but also and more fundamentally because of the legal distinction between acting through another person in the performance of an act and contracting with such other person for the performance of such act. This distinction, which lies at the foundation of the independent contractor doctrine, is too radical to be overlooked when considering the underlying principle of these cases, which is that the relation between the parties or their business custom raises a presumption of agency that includes the right to declare the value of the goods or to assent to a valuation placed on them by the carrier, which are correlative powers, neither of which will without proof be presumed in a case such as the present

where the charges demanded by the carrier were paid by one who was himself the mere driver of teams for another common carrier.

There is nothing therefore in the decisions we have spoken of that militates against the conclusion we have reached, which is that the driver of the transfer company in the present case had no authority from Miss Ferris to make for her a special contract with the express company by which the liability of the latter should be limited in the event of loss. Having reached this conclusion the question whether the driver had by his silence assented to the terms of the receipt that was handed to him does not call for decision. The reason under consideration therefore does not lead to the reversal of the judgment brought up by this writ of *certiorari.*

The only other reason urged for reversal is that the authority of A. J. Town as general agent of the defendant in Philadelphia to bind the defendant by his declarations was not established. This was the chief defect upon a previous trial of this cause, as appears from the opinion of Mr. Justice Pitney in *Hill* v. *Adams Express Co., 45 Vroom* 339. An examination of the testimony given at the present trial satisfies us that the deficiency of proof thus pointed out was fully supplied by competent evidence. That evidence was that W. S. Scull, acting for the plaintiff in the assertion of her claim, went to the office of the defendant in Camden where he was referred to the general office of the defendant in New York City which he visited a number of times, until finally at his request the matter was referred to the Philadelphia office from which latter office Mr. Scull soon after received a letter signed A. J. Town, which stated on its letter-head that A. J. Town was the general manager of the defendant in Philadelphia and in its body showed that the matter under consideration in New York had been by correspondence communicated to the Philadelphia office. Thereupon Mr. Town, in pursuance of such communication, took up with Mr. Scull the adjustment of Miss Ferris' claim, in the course of which the former made certain statements relative to the matter in hand to whose admission in evidence the defendant objected at the

trial. We think that the authority of Mr. Town to represent the defendant was clearly inferable from the proofs, and that the statements ascribed to him were germane to the matter that had been referred to him by the defendant, and hence relative and admissible in a suit against it growing out of the same transaction.

The case for the plaintiff is much stronger than it was in *Agricultural Insurance Co.* v. *Potts,* 26 *Vroom* 158, and in *Smith* v. *Delaware and Atlantic Telegraph and Telephone Co.,* 19 *Dick. Ch. Rep.* 770, and presents the exact antithesis of *Huebner* v. *Erie Railroad Co.,* 40 *Vroom* 327, all of which cases were in the Court of Errors and Appeals. In the same court in *King* v. *Atlantic City Gas and Water Co.,* 41 *Id.* 679, it was said by way of illustration that "our cases show that where one authorizes another to speak for him he may be confronted by testimony as to what his representative said within the scope of his authority." That is the precise situation here. Town's authorization to discuss the plaintiff's claim with Scull as her representative carried with it the making of such statements and explanations from the defendant's standpoint as were germane either to the denial or the adjustment of her claim, in fine was essentially an authority to speak for the defendant in the premises. Hence declarations made within the scope of such authority were properly admitted in evidence in a trial against the defendant growing out of the same subject-matter.

Finding in none of the reasons filed by the prosecutor any ground for reversal the judgment of the District Court is affirmed.