Rehearing granted September 21, reargued October 11, former opinion approved November 9, 1915.

## GRICE v. OREGON-WASH. R. & N. CO.*

(150 Pac. 862; 152 Pac. 509.)

**Appeal and Error—Presentation of Grounds of Review in Court Below—Exceptions—Necessity.**

1. Where the facts were all stipulated, no exception to the court's decision need be taken under Section 172, L. O. L., declaring that no exception need be taken to any decision upon a matter of law; the judgment being merely an application of the law to the facts.

**Commerce—Interstate Commerce—Regulations—Liability of Carriers.**

2. The interstate Commerce law (Act Feb. 4, 1887, c. 104, 24 Stat. 379), which was designed to prevent preferences, does not prohibit a carrier from assuming the common-law liability in carrying goods from one state to another.

[As to effect of Interstate Commerce Act upon carrier's liability for loss of or injury to goods or baggage, see note in **Ann. Cas. 1912B, 672.**]

**Carriers—Carriage of Goods—Action—Burden of Proof.**

3. A carrier, seeking to reduce its liability for goods lost in transit, must allege and prove facts entitling it to the reduction.

**Principal and Agent—Authority of Agent.**

4. A transfer company, authorized to deliver household goods to a particular railroad company for shipment has no authority to consent to a reduction of the carrier's common-law liability, and the agreement reducing the liability is not binding on the shipper.

**Carriers—Carriage of Goods—Liability—Stipulation.**

5. A bill of lading provided that the amount of any loss or damage for which the carrier was liable should be computed upon the basis

---

*For rulings on the effect of stipulations as to carrier's liability, see note in 28 L. R. A. (N. S.) 293. REPORTER.

of the value of the property, being the *bona fide* invoice price, unless a lower value had been represented in writing by the shipper, or agreed upon, or is determined by the classification or tariff upon which the rate was based. A carrier lost goods delivered under such a bill. Neither the bill of lading nor the statement of facts on which the cause was tried showed the valuation of the property. The statement of facts failed to show that a value lower than the invoice price had been represented by the shipper, or that a lower value had been agreed upon, or the value as determined by the classification or tariff upon which the rate was based. *Held* that, as none of these matters were disclosed by the pleadings or statement of facts, the carrier was liable for the actual value of the goods under the common-law rule.

[As to limiting by bill of lading carrier's liability, see note in 88 Am. St. Rep. 74.]

**Principal and Agent—Waivers—Ratification.**

6. For a waiver of liability made by a drayman to an express company to become binding on a shipper by ratification, the company must show that the shipper was fully advised regarding the waiver soon enough to have rejected it.

**Principal and Agent—Custody of Goods—Presumption—Waiver to Express Company.**

7. Custody of goods at the moment of shipping is not such indicia of authority that agency to waive liability on the part of an express company by which he is shipping them will be presumed.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

This is an action by Otto Grice and Florence Grice against the Oregon-Washington Railroad & Navigation Company, to recover damages from the defendant, a common carrier engaged in interstate commerce, for failure to deliver goods intrusted to it by the plaintiffs for shipment from Spokane, Washington, to Portland, Oregon. The corporate character of the defendant and the nature of its business are admitted. The complaint alleges that on or about January 21, 1913, in Spokane, Washington, the plaintiffs delivered to the defendant, and it accepted, for transportation by freight to Portland, Oregon, certain of their household goods. It is also alleged and admitted that the plaintiffs paid to the defendant the amount demanded by it as a freight charge for the service contemplated.

The plaintiffs charge, also, that the defendant failed to deliver all the goods, the portion not delivered amounting in value to $545.54, for which sum they demand judgment. The defendant admits receiving the goods, and that it was unable to deliver a part of the shipment. Other allegations of the complaint are denied, except as stated in the affirmative matter of the answer. The pleading, after averring the corporate character and business of the defendant, proceeds as follows:

"That heretofore, and on or about the twenty-second day of January, 1913, at Spokane, Washington, Otto Grice and Florence Grice, plaintiffs herein, acting by and through one Pacific Transfer Company, which was then and there in the possession of the goods hereinafter mentioned, caused to be delivered to the defendant a shipment of freight, contents and condition of package unknown, and represented by the shipper to be two boxes of household goods, one boxed trunk, one crated cedar chest, and one barrel and contents, weighing 1,280 pounds, prepaying the charges thereon in the sum of $12.70, with instructions to transport said freight over its line of railroad from Spokane, Washington, to East Portland, Oregon, and there deliver said shipment to Otto Grice. That at the time of delivering said shipment to the defendant, said plaintiffs, by and through their agents and employees, and particularly the Pacific Transfer Company, the shipper in possession, and in charge of said shipment, elected to have said goods transported under the terms and conditions of the uniform bill of lading hereinafter set forth, and then and there issued and delivered to the said shipper, for the said plaintiffs herein, and did then and there release to a valuation of ten dollars per hundred-weight the said shipment, in case of loss or damage to said goods while in transit, and did indorse said agreement upon the bill of lading, issued and delivered to, and received and accepted by, the said plaintiffs, under which

agreement the said shipment was transported. The defendant, Oregon-Washington Railroad & Navigation Company, at all the times mentioned, had in force and effect a rate covering the said shipment, where the same was released to a valuation of ten ($10) dollars per cwt., and which rate was and is less than the rate charged for shipments not released to ten ($10) dollars per cwt., and said rates were duly filed, posted, and published as required by the interstate commerce law, and that the shipment moving from Spokane, Washington, to Portland, Oregon, was and is an interstate shipment, and at all times, subject to the rules, regulations, and rates so posted, filed, and published with said Interstate Commerce Commission. That in and by the terms and conditions of said bill of lading under which said shipment moved, it is provided, among other things, as follows: 'The amount of any loss or damage for which any carrier is liable shall be computed upon the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepared) and at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from any negligence.' And said bill of lading further provides: 'It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof), and which are agreed to by the shipper and accepted for himself and his assigns.' That at the time plaintiffs delivered this shipment to the defendant at Spokane, Washington, they represented to said de-

fendant that said shipment weighed 1,280 pounds, and was of the value of ten dollars per cwt., to wit, of the value of $128.00, and agreed that in case of loss or damage to said property, or any part thereof, the total value of the same, or the portion lost and damaged, was ten dollars per cwt., and, having so agreed and represented, they secured the lower rate applying on shipments so released and valued. That thereafter, and while said shipment was being transported over the line of railroad of the defendant, a portion of the said shipment was lost, stolen, or damaged, the exact manner of which is unknown to this defendant. That the portion of the shipment which was lost or damaged, as hereinbefore mentioned. weighed 670 pounds, and, under the tariffs, bills of lading, reduced rate, and agreement, as to value of ten ($10) dollars per cwt., under which this shipment moved, the value of said portion of said shipment so lost and damaged, was and is $67. That the prepaid charges on 25 pounds—being the portion of said shipment lost or stolen, at the rate of 99 cents per cwt., which was and is the lawful rate applicable thereto—amount to the sum of 24 cents, making a total amount due the plaintiffs of $67.24. Thereafter, and prior to the commencement of this action, this defendant offered and tendered to the plaintiffs, in full settlement of all liability arising out of the alleged loss set forth in the complaint, the sum of $67.24, but plaintiffs refused to accept the same. By reason of the premises, the plaintiffs are and ought to be estopped from asserting or from claiming or recovering from defendant any greater sum than $67.24, for said alleged loss and damage, and this defendant offers to permit the plaintiffs to take judgment for the sum of $67.24, and that the defendant recover against the plaintiffs its costs and disbursements of this action."

This new matter is denied by the reply. At the hearing it was agreed in writing by the parties that the cause should be tried, argued and submitted upon the following statement of facts:

"That defendant is now and during all the dates hereinafter mentioned has been, a corporation organized and existing under and by virtue of the laws of the State of Oregon, with its principal office and place of business in the City of Portland, State of Oregon, and was engaged, at the times herein named, in the operation of a line of railroad extending from Portland, in the State of Oregon, to Spokane, in the State of Washington, and elsewhere, and was engaged in interstate commerce, and subject to all the provisions and terms of an act of Congress, approved February 4, 1887, entitled 'An act to regulate commerce' and acts amendatory thereof. That heretofore, and on or about the twenty-second day of January, 1913, at Spokane, Washington, Otto Grice and Florence Grice, plaintiffs herein, acting by and through one Pacific Transfer Company, which was then and there in possession of the goods hereinafter set forth, caused to be delivered to the defendant a shipment of freight, to wit, two boxes, one trunk, one cedar chest, and one barrel, which said boxes, trunk, cedar chest, and barrel, contained household goods, silverware, and cut glass, weight being 1,280 pounds, prepaying the charges thereon in the sum of $12.70, with instructions to transport said goods by freight over its line of railroad from Spokane, Washington, to East Portland, Oregon, and there deliver said shipment to Otto Grice. That the plaintiffs instructed the said Pacific Transfer Company to deliver the shipment above mentioned to the defendant, for shipment from Spokane, Washington, to East Portland, Oregon, and said plaintiff gave the Pacific Transfer Company no other or further instructions whatsoever. That defendant, Oregon-Washington Railroad & Navigation Company, at all times mentioned, had in force and effect a rate covering the said shipment, where the same was released to a valuation of $10 per hundredweight, and which rate was and is less than the rate charged for shipments not released to $10 per hundredweight, which rate was duly filed, posted and published as required by the interstate commerce law. That a bill

of lading was issued for said shipment of freight as herein referred to, and was given to Pacific Transfer Company and by it sent to plaintiffs at City of Portland, Oregon, at which place plaintiffs were at the time said goods were delivered to defendant. That a copy of said bill of lading as so issued is hereto attached, marked 'Exhibit A,' and made a part of this stipulation. That the agent of said defendant company, who received said shipment at Spokane, Washington, did not inform the Pacific Transfer Company of a valuation having been placed on said shipment, nor of a difference of freight rates for shipments so taken at an agreed valuation and shipments taken without an agreed valuation, and that defendant made no inquiry as to the value of the goods. That while in transit over the line of defendant the goods shipped were lost by theft, and damaged by thieves, as of the agreed loss and damage of $545.52, which has been demanded of defendant and payment refused. That said goods so lost and damaged belonged to the plaintiffs. That the portion of the shipment which was lost or damaged, as herein mentioned, weighed 670 pounds, and under the released valuation of $10 per hundredweight the valuation of said portion of said shipment so lost and damaged was and is $67. That the prepaid charges on 25 pounds, being the portion of said shipment lost or stolen, at the rate of 99 cents per hundredweight, amounting to the sum of 24 cents, making a total due under said released valuation of $67.24. That defendant, prior to the commencement of this action, tendered to the plaintiffs, in full settlement of all liability arising out of the alleged loss, the sum of $67.24, but plaintiffs refused to accept the same.''                                          AFFIRMED.

For appellant there was a brief over the names of *Mr. John P. Hannon, Mr. Arthur C. Spencer* and *Mr. Charles E. Cochran,* with an oral argument by *Mr. Hannon.*

For respondents there was a brief and an oral argument by *Mr. Lotus L. Langley.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. It is insisted by the plaintiffs that, according to the bill of exceptions, no exception appears to have been taken to the decision of the Circuit Court, and hence nothing is here presented for our consideration.

It is said in Section 172, L. O. L.:

"No exception need be taken or allowed to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court."

The parties agreed upon the facts involved in this litigation. To all intents and purposes their agreement constituted a verdict or declaration of the truth concerning the matters in controversy. It was filed in the court as part of its record, and was binding upon their tribunal, as well as upon its makers; consequently, in the language of the statute referred to, no exception was necessary. The whole question is whether the circuit court reached the proper conclusion from the facts and pleadings submitted to it by the parties.

2-4. On inspecting "A" attached to the bill of exceptions, almost the first language that meets the eye is this:

"This memorandum is an acknowledgment that a bill of lading has been issued, and is not the original bill of lading, nor a copy or duplicate, covering the property named herein, and is intended solely for filing or record."

We may well doubt if this is a sufficient bill to present the question raised. Omitting, however, the quoted memorandum, the document contains this matter:

"Oregon-Washington Railroad & Navigation Company.

"Received, subject to the classifications and tariffs in effect on the date of the receipt by the carrier of the property described in the original bill of lading, at Spokane, 1/21/1913, from Pacific Trans. Co., the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns. The surrender of the original order bill of lading properly indorsed shall be required before the delivery of the property. Inspection of property covered by the bill of lading will not be permitted, unless provided by law or unless permission is indorsed on the original bill of lading or given in writing by the shipper. * *

"Consigned to order of Pacific Trans. Co.

"Destination, East Portland, State of Ore. * *

"Notify Otto Grice.

"At East Portland, State of Ore. * * "

Under head of "Description of Articles and Special Marks" appear these items:

"2 Box H. H. Goods.

"1 " Trunk.

"1 crt. cedar chest.
"1 bbl. and contents.
   "Declared valuation, $10.00
   "Accomplished 1/ 28/ 13.
                 "J. B. GLOVER.
   "Spokane 1098   1/22/13 Pro. 2986   1/28/13."

The weight is given at 1,280, presumably in pounds. The following names appear at the end of the document:

"Pacific Trans. Co. Shipper.
                 "Per  Coker.
                       "J. C. MAYO, Agent,
                          "Per H. Agent.
                          "Per ————.""

On the back of this exhibit among others, appear the conditions quoted in the defendant's answer.

In our judgment there is nothing in the interstate commerce law that forbids a common carrier from assuming the common-law liability in the carriage of goods from one state to another. The design of the national legislation on this subject was to extirpate preferences and advantages given by transportation companies to favored shippers, and to compel interstate carriers to treat all alike under the same circumstances. Subject to that congressional statute and the authority of the Interstate Commerce Commission, the carrier is permitted to make reasonable contracts limiting its liability to more favorable terms than the stringent rules of the common law. In the instant case the plaintiffs seek to recover the full value of the goods lost on the hypothesis that they were intrusted to the carrier for shipment and that it has failed to deliver them, and if nothing else is shown that would be the measure of damages. If it would escape responsibility for this amount, the

defendant must allege and prove facts sufficient to entitle it to the desired reduction of its liability. Regarding the stipulation of facts as a full declaration of the truth, it becomes necessary to compare it with the pleading of the defendant, to ascertain how much of the answer is sustained by this conventional verdict.

As noted above, the defendant's pleading states in substance that, acting by their agent, the Pacific Transfer Company, the plaintiffs elected to have the goods transported under the uniform bill of lading, then and there released the property to a value of $10 per hundredweight in case of loss or damage while in transit, and indorsed the agreement upon the bill of lading. It is conceded on both sides that the property was delivered to the defendant at Spokane by the transfer company as the agent of the plaintiffs. As to the extent of the agency the stipulation is to this effect: That the plaintiffs instructed the Pacific Transfer Company to deliver the shipment to the defendant company for shipment from Spokane to Portland, but gave the transfer company no other or further instructions whatsoever. · As stated by Mr. Justice EAKIN in *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961): "Any person dealing with an agent does so at his peril." It is a general principle, well established by precedent, that if one would charge another by the act of a third party the former must establish the real or apparent authority of the alleged agent. In this instance the extent of the agent's power is stipulated. It was simply to deliver the goods for shipment. The fact has been thus ascertained by the stipulation, and, having been so settled, it is a question of law as to what the agent may do by virtue of such a warrant: *Glenn* v. *Savage,* 14 Or. 567 ( 13 Pac. 442).

As a matter of law, it cannot be said that the power of the plaintiffs' agent as defined by the statement of facts was extensive enough to sanction the stipulation for the principals about the value of goods or the agreement to the various conditions and provisos that are usually found on the back of documents like the one in question, unless something more is shown in the way of customary dealings between the parties, or some general usage of which all concerned are deemed to have taken notice as a binding rule of business. It is not pretended that the plaintiffs themselves executed or specially authorized the transfer company to execute for them the so-called bill of lading. Neither is there anything in the stipulation of facts about the plaintiffs having elected to ship under the uniform bill of lading. According to that statement it does not appear that they released the property at a value of $10 per hundredweight. This converted allegation of the answer about election of conditions and release of value must therefore be held to have failed of proof.

5. The principal controversy is upon the effect of the clause quoted in the answer about the basis upon which damage shall be calculated. An analysis of that excerpt reveals that there are four conditions affecting the calculation of damage in case of loss. The first is the *bona fide* invoice price, if any, to the consignee; but no such valuation appears on the bill of lading or in the stipulation. The second is an exception in case a lower value has been represented in writing by the shipper. The third is when a lower value has been agreed upon; but nothing appears in the statement of facts on either of these subjects. And the fourth is when the value is determined by the classification or tariff upon which the valuation is based. The classification of freight and the tariff

applicable thereto are not disclosed by either the pleadings or the stipulation. Hence there is nothing in the case in the final analysis to affect the valuation one way or the other, with the result that only the true and actual worth of the goods is open to consideration. The statement of facts is also silent upon the allegation of the answer that the plaintiffs represented the shipment to be of the value of $10 per hundredweight. In short, the proof as agreed upon by the litigants does not establish the defendant's case as made in its answer. Having admitted that it received the goods for transportation and that it failed to deliver part of them, the defendant was liable under the common-law rule for the actual value of the lost chattels, unless it had shown a lawful contract lessening its liability. The declaration of the truth settled by the parties does not disclose the necessary excuse in favor of the defendant. In this state of the case the Circuit Court drew the only proper conclusion from the agreed facts.

The judgment is affirmed.

AFFIRMED.    REHEARING GRANTED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

---

Former opinion sustained November 9, 1915.

ON REHEARING.

(152 Pac. 509.)

On rehearing for appellant there was a brief over the names of *Mr. Charles E. Cochran, Mr. John P. Hannon* and *Mr. Arthur C. Spencer,* with oral arguments by *Mr. Cochran* and *Mr. Hannon.*

For respondents there was a brief with an oral argument by *Mr. Lotus L. Langley.*

In Banc.   MR. JUSTICE BURNETT delivered the opinion of the court.

A statement of the issues in this case appears at page 18, 78 Or. (at page 862 of 150 Pac.), and need not be here repeated.   On the rehearing the defendant argued that, under the stipulation of facts, the plaintiffs were bound by all the acts of the Pacific Transfer Company of Spokane, including the execution by it of the bill of lading which the defendant contends released the value of goods to $10 per hundredweight, carrying with it a reduced rate of freight and the accompanying waiver of all value in the settlement of damages for loss of goods above the conventional appraisement.   In substance, the defendant maintains as a principle that whoever has possession of goods and tenders them to a common carrier for shipment has apparent authority to bind the owner by any lawful contract of carriage.   A number of New York cases are cited in support of this doctrine.   The leading one is *Nelson* v. *Hudson R. R. Co.,* 48 N. Y. 498.   There the plaintiff had bought a large mirror from a firm dealing in such goods, and directed the seller to ship it to him by the defendant's railroad.   A custom relating to such shipments was known to the firm to the effect that freight of that kind in packages too large to be put into closed cars should be carried on open cars, but at a valuation lessening the amount of damages to be assessed in case of loss. The firm sent the mirror to the railroad company, which issued a restricted receipt according to the usage, and agreed to hold the property until the seller should examine the same and determine whether to accept those conditions or to retain the goods.   After

waiting the stipulated time and hearing nothing further, the company forwarded the goods, which were damaged en route. In the opinion by Judge Hunt it was held that the firm had apparent authority to agree to the release. An opinion by Mr. Justice EARL concurs on the ground that the firm had ratified the release after knowing all the facts, but held that its cartman had no authority to make the contract. He made the matter to depend entirely upon ratification. It is significant that the opinion quotes with approval from Redfield, Carriers, § 52:

"As a general rule, the agent to whom the owner intrusts the goods for delivery must be regarded as having authority to stipulate for the terms of transportation. By this we do not mean the porter or cabman, or mere servant, but the consignor of the goods, or any other agent of the owner who purchases or procures them for him."

Another precedent is *California Powder Works* v. *Atlantic & Pacific R. R. Co.,* 113 Cal. 329 (45 Pac. 691, 36 L. R. A. 648). The plaintiff manufactured powder at Santa Cruz, California, and habitually transported it by narrow-gauge railroad to San Jose, where it became necessary to convey it in trucks to the depot of the defendant and load it on the defendant's broad-gauge cars. During a period of several years this transfer from one road to the other had been committed to a certain drayman, and a course of business had grown up between the parties whereby he in every instance executed the ordinary release of valuation and exemption from damages beyond a certain sum. It was there held that all these circumstances raised an apparent authority of the drayman to execute the release, so that for the loss of a carload of powder by explosion during transportation the

plaintiff was allowed to recover only the lesser valuation. In *Adams Express Co.* v. *Carnahan,* 29 Ind. App. 606 (63 N. E. 245, 64 N. E. 647, 94 Am. St. Rep. 279), the plaintiff declared specially on a contract made with his agent, and, of course, could not repudiate part of that agreement and rely upon the rest. In *Atchison etc. Ry. Co.* v. *Baldwin,* 53 Colo. 416 (128 Pac. 449), the contract of shipment was made by one who had been employed by the plaintiff company several years in that business, and the stock in question was shipped in the presence of one of the owners. In *Blair* v. *American Forwarding Co.,* 159 Ill. App. 511, the defendant was a forwarding company and made its profits in business by accumulating from individual purchasers different small lots of freight, and combining them until they would amount to enough to fill a car, when it would ship the goods in its own name, and, in pursuance of a custom which had grown up in the business, would sign the lease. It was decided that under these circumstances the defendant would not be held for more than the stipulated value. In *Squire* v. *New York Cent. R. R. Co.,* 98 Mass. 239 (93 Am. Dec. 162), a drover was accompanying a cargo of hogs destined to a distant point. During the journey it became necessary to change them into the cars of another transportation company, and it was held that he had apparent authority to execute the usual release. In *Peirce* v. *American Express Co.,* 210 Mass. 383 (96 N. E. 1026), the plaintiff had sent part of his automobile to a repair-shop in Boston, with instructions to return it to him by express. It was held that the repairer had authority to take the usual receipt. In *McElvain* v. *St. Louis & S. F. R. Co.,* 176 Mo. App. 379 (158 S. W. 464), the plaintiff had bought a carload of mules and directed the seller to

attend to all the details of shipping them to him, which, it was decided, gave the seller apparent authority to execute a release. In *Willard* v. *Chicago & N. W. R. R. Co.,* 150 Wis. 234 (136 N. W. 646), the plaintiff went with his hired man and loaded his horses into the defendant's car. He then went away, directing the man to attend to getting the bill of lading. It was held that there was apparent authority in the hired man to execute the release. In *Great Northern Ry. Co.* v. *O'Connor,* 232 U. S. 508 (58 L. Ed. 703, 34 Sup. Ct. Rep. 380), the plaintiff had intrusted her goods to a forwarding company, which obtained carload rates by combining small shipments, and it was held that, if, the defendant was a shipper to obtain carload rates, it was also a shipper to agree upon released valuation. In the forwarding company cases it appears that the defendants were interested directly in the rates, and made their profit by combining small shipments into carload lots, getting carload rates, and charging their customers part of the difference between them and the greater ones upon small lots. The element of special circumstances runs through all the precedents cited by the defendant, and indicates that the person attending to the transportation of the goods had a more intimate connection with them than that of a mere drayman or servant.

A case more applicable to the instant litigation is *Benson* v. *Oregon Short Line R. R. Co.,* 35 Utah, 241 (99 Pac. 1072, 136 Am. St. Rep. 1052, 19 Ann. Cas. 803). The plaintiff, at Butte, Montana, employed a man to pack and deliver at the defendant's depot for shipment to Logan, Utah, certain household goods. These were taken to the depot by the man, and by him delivered to the defendant to be shipped. He signed

a release much the same as the one here involved. A clause of the syllabus reads thus:

"The drayman employed by a shipper to take goods to a railroad depot and ship them is not authorized to enter into a contract with the carrier limiting the carrier's liability, and the shipper is not bound by the contract, the drayman not being one who was in the habit of taking plaintiff's goods to the depot and arranging for their shipment, and the shipper not being furnished with a copy of the contract, and not knowing of its existence until long after the goods were shipped."

In *Hill* v. *Adams Express Co.,* 77 N. J. Law, 19 (71 Atl. 683), the following appears in the syllabus as expressive of the doctrine of the case:

"A box to be shipped by Adams Express Company to Ireland was called for at the residence of the shipper by a driver of a local transfer company and delivered by him to the express company with a prepayment of the charges; nothing being asked or said as to valuation. The receipt that was handed to the driver of the transfer company by the express company was delivered by him to the shipper two days later, at which time the box, while in the possession of the express company, had already been destroyed by fire. In an action brought by the shipper against the express company for the value of the box, held, that a motion to nonsuit was properly denied, and that a request that the plaintiff's recovery be limited to $50 pursuant to a provision in the express receipt was properly refused. Where a shipper employs a common carrier (in this case the Union Transfer Company) to carry goods to an express office (in this case Adams Express Company) for shipment, the driver of the wagon of the local carrier who delivers the goods to the express company is not a servant or agent of the shipper with whom the express company may make a special contract binding the shipper in the event of

loss to a limitation of such carrier's common-law liability.''

In *Stickel* v. *United States Express Co.,* 85 N. J. Law, 285 (89 Atl. 23), the plaintiff ordered the express company to call at her room and get a trunk for shipment. She told her landlord to let the defendant have the trunk and get a receipt. He took a restricted receipt, and it was held that he exceeded his apparent authority. In *Hayes* v. *Adams Express Co.,* 74 N. J. Law, 537 (65 Atl. 1044), the defendant's driver got a drop curtain from the plaintiff's employee, who issued a limited liability receipt. It was held to be disputable whether the plaintiff assented to the terms of the document. In *Schlosser* v. *Great Northern Ry. Co.,* 20 N. D. 406 (127 N. W. 502), the court refused to recognize one in custody of certain horses as having apparent authority to execute a released valuation contract in the name of the plaintiff. In *Hailparn* v. *Joy S. S. Co.,* 50 Misc. Rep. 566 (99 N. Y. Supp. 464):

''The owner of goods, with a truckman, took them to a carrier; the owner leaving the truckman to deliver them, get a receipt therefor, and deliver it to the owner's wife. The truckman delivered them, got a bill of lading, naming him as 'owner or shipper,' and the owner as consignee, and without examination signed in his own name a paper handed him by the carrier's agent, who knew he was merely a truckman, with the direction that he sign 'this release,' which recited that, in consideration of the transportation of the goods at 'reduced rates,' of which fact there was no other evidence, liability for damages from negligence of the carrier was released. Held, that the release was ineffectual; there being nothing to show it was accepted by the shipper.''

6, 7. In the instant case the stipulation says:

''That the agent of said defendant company who received said shipment at Spokane, Washington did not

inform the Pacific Transfer Company of a valuation
having been placed on said shipment, nor of a differ-
ence of freight rates between shipments so taken at an
agreed valuation and shipments taken without an
agreed valuation, and that defendant made no inquiry
as to the value of the goods."

It is true indeed, the stipulation contained this
clause:

"That a bill of lading was issued for said shipment
of freight as herein referred to and was given to
Pacific Transfer Company, and by it sent to plaintiff
at the City of Portland, Oregon, at which place plain-
tiffs were at the time said goods were delivered to de-
fendant."

It does not appear, however, that the plaintiffs re-
ceived the document prior to the loss of the goods, or
that they had an opportunity to either ratify or re-
ject the same until it was too late to take such action.
In this respect the case is parallel to that of *Hill* v.
*Adams Express Co.,* 77 N. J. Law, 19 (71 Atl. 683).
In all instances ratification must proceed upon a
knowledge by the party to be charged of all the facts
relating to the transaction which it is sought to en-
force against him. Everything at Spokane, includ-
ing the prepayment of the charges, was done by the
transfer company. The argument of the defendant
depends upon the fallacy that the payment of the
amount charged for freight was made directly by the
plaintiffs, but the stipulation will not bear this con-
struction. The essence of the controversy here nar-
rows down to the question of whether or not in all
cases the person at the moment in custody of goods
has apparent authority to bind the owner to conditions
lessening the efficacy of his remedy against the trans-

portation company for loss of goods en route. It is stipulated:

"That the plaintiffs instructed said Pacific Transfer Company to deliver the shipment above mentioned to the defendant for shipment from Spokane, Washington, to East Portland, Oregon, and said plaintiffs gave the Pacific Transfer Company no other or further instructions whatsoever."

This agreed fact shows no further or different circumstance than attends the most irresponsible transient drayman whose entire connection with the transaction ends when he unloads the chattels at the freight depot and receives his cartage from their owner. The plaintiffs did not order the transfer company to ship the goods which might include the authority to make the contract. The direction was only to deliver the goods to the defendant for shipment, in which case both the duty and authority of the transfer company ended with the delivery of the goods; in other words, there is nothing in the case at hand distinguishing the transfer company from any other chance employee. There is no magic in the words "the transfer company" which differentiates that concern from any other occasional truckman. This isolated instance is far different from a long course of business and other circumstances disclosed in the precedents the defendant has cited. In those a much more intimate relation to the property by the person in custody of the same is shown than appears in this case.

It is laid down in *Lacey* v. *Oregon R. & N. Co.*, 63 Or. 596 (128 Pac. 999), that, where the defendant carrier alleges a special contract lessening its common-law liability, it must prove the same. As stated in *Russell* v. *Erie R. R. Co.*, 70 N. J. Law, 808 (59 Atl. 150, 67 L. R. A. 433, 1 Ann. Cas. 672):

"The burden of proof of showing such a limitation of liability is on the defendant company and, being in derogation of common right, is to be construed most strongly against the carrier: 5 Am. & Eng. Ency. Law (2 ed.), 336; *Ashmore* v. *Pa. Stream Towing & Trans. Co.,* 28 N. J. Law, 180; *Hooper* v. *Wells, Fargo & Co.,* 27 Cal. 11 (85 Am. Dec. 211). No presumptions will be indulged in in favor of exemptions from common-law liability."

Applied to this case, it is incumbent upon the defendant to show something more than the transient drayman's mere casual connection with the goods. Having proven nothing further than that, it has fallen short in its effort to establish its special contract; for it cannot be accepted as an unvarying and inflexible rule of law that any and everyone whomsoever, momentarily in custody of goods, may subject them to a contract of carriage so vitally affecting the owner's interest.

We adhere to the former opinion.

AFFIRMED.    SUSTAINED ON REHEARING.