Argued 4 January, decided 30 January, 1905.

**GARDNER *v.* WILEY.**

79 Pac. 341.

AGENCY—ESTOPPEL.
1. Under the general law of estoppel an employer who permits his employee to sell goods as though he were an independent dealer, holding him out to the public as such, will not be permitted to deny his apparent position as against those who have dealt with him without notice of the facts and in good faith.

NOTES—NEED OF INDORSEMENT BY JOINT PAYEES.
2. Notes payable to more than one payee cannot be assigned except by the joint action of all the payees, nor can an undivided interest therein be transferred by any one or more payees less than all.

INDORSEMENT OF NOTES PAYABLE TO PAYEE BY A FIRM NAME.
3. A note payable to one by a firm or business name may be indorsed by him personally.

From Multnomah: ÁLFRED F. SEARS, JR., Judge.

Bill of interpleader, wherein the plaintiffs were discharged and the money in court was ordered paid to *C*. S. Wiley, from which the Mihalovitch-Fletcher Co. appeals.             AFFIRMED.

For appellant there was a brief over the name of *Paxton, Beach & Simon,* with an oral argument by *Mr. Nathan D. Simon.*

For respondent there was a brief over the name of *Williams, Wood & Linthicum,* with an oral argument by *Mr. J. Couch Flanders.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. This is a bill of interpleader filed by Gardner Bros. against Charles S. Wiley and the Mihalovitch-Fletcher Co. to have determined the conflicting claims of the defendants to the amount due on certain promissory notes given by the plaintiffs to the G. Winehill Anti-Trust Distilling Co., and subsequently transferred by Winehill to one Rosenberg, and by Rosenberg to Wiley. The facts are that in June, 1902, Winehill, who had previously been employed by the Crystal Springs Distilling Co., desiring to make some change in his business arrangements, entered into negotiations with the Mihalovitch-Fletcher Co., wholesale liquor dealers of Cincinnati, Ohio, for the handling of their goods in the States of Oregon, Washington, Idaho, Montana, and Wyoming. After satisfactory arrangements had been made, the Mihalovitch-Fletcher Co. suggested that Winehill do business under the name of George Winehill & Co.; but, as he had previously been working for a wholesale house belonging to the trust, he preferred the name of the Anti-Trust Distilling Co., and that was agreed upon by the parties. They thereupon entered into a written agreement designating the parties thereto as Mihalovitch-Fletcher Co., party of the first part, and the Anti-Trust Distilling Co., party of the second part. By the terms of this agreement the Mihalovitch-Fletcher Co. agreed to sell to the Anti-Trust Distilling Co. all the line of goods they manufactured or had for sale at certain prices, to keep the books of the distill-

ing company for the nominal charge of $10 a month, to fill and ship orders as directed, bill out all goods, attend to all correspondence, and draw on customers as accounts became due. The distilling company was to give each month a note due four months after date for all goods ordered by it from the Mihalovitch-Fletcher Co. during the previous month, and remit to the latter all collections from customers, the amount thereof to be credited on the notes. If the collections were not sufficient to pay the notes of the distilling company at maturity, a further extension of two months was to be given, but the extension notes were to be paid in full when due, without further delay. If the Mihalovitch-Fletcher Co. had to buy goods in the market to fill orders, it was to receive ten per cent profit thereon. The distilling company was to take out and pay for wholesale and retail licenses, hire and direct all salesmen, and pass on all orders. Such orders were to be filled by the Mihalovitch-Fletcher Co. if it found them satisfactory. A monthly statement was to be rendered by the Mihalovitch-Fletcher Co. to the distilling company of all sales and collections, and it was to extend to the distilling company a credit of $20,000, should the company use proper judgment in selling goods to responsible parties. The distilling company was to take out an insurance policy on its accounts, so as to provide against loss, and all accounts for goods sold were to belong to the Mihalovitch-Fletcher Co., the proceeds to be applied in payment of the bills and notes of the distilling company. This contract was signed, "G. Winehill for the Anti-Trust Distilling Co.," and "Mihalovitch-Fletcher Co."

After the making of the contract, Winehill traveled and sold goods under the name of the Anti-Trust Distilling Co., or G. Winehill Anti-Trust Distilling Co., within the territory mentioned, to whomsoever he pleased, and at such prices as he desired; sending his orders to the Anti-Trust Distilling Co., at Cincinnati, where they were filled from the goods of the Mihalovitch-Fletcher Co., but billed to the customers in the name of the Anti-Trust Distilling Co. On the first of each month the Mihalovitch-Fletcher Co. sent a statement or bill for goods previously ordered to Winehill, who made, executed, and delivered

to them a promissory note therefor. The business relations thus continued between the parties until some time in 1903, and during that time Winehill sold to the plaintiffs, for the Anti-Trust Distilling Co., goods of the value of $789.76, for which he took their five several promissory notes, payable to the order of "G. Winehill Anti-Trust Distilling Co." These notes he subsequently sold and transferred to one Rosenberg, who assigned them to the defendant Wiley for collection. The position of the Mihalovitch-Fletcher Co. is that the name "Anti-Trust Distilling Co.," used in its dealings with Winehill, and under which he did business, was intended as a mere device to deal with the retail trade without offending the jobbers, and that Winehill was in fact nothing more than a traveling salesman of theirs, and therefore had no right to take notes in his own name for goods, or to transfer or dispose of such notes. Winehill, on the other hand, testifies that he was not a salesman, or in the employ of the Mihalovitch-Fletcher Co., but was doing business on his own account as the Anti-Trust Distilling Co., paying for such goods as he ordered from time to time from the Mihalovitch-Fletcher Co., and therefore owned and had a right to sell to Rosenberg the notes taken by him from the plaintiffs for goods sold to them. In this position Winehill is corroborated by the form of the agreement made by him with the Mihalovitch-Fletcher Co. and the subsequent course of dealings, but it is not necessary to decide that question in this case. In any event, the Mihalovitch-Fletcher Co. permitted him to do business under the name of the Anti-Trust Distilling. Co., or G. Winehill Anti-Trust Distilling Co., holding him out as such company, and it is therefore estopped to deny his authority as against parties dealing with him without notice or knowledge.

It is admitted that the notes given by the plaintiffs to Winehill in payment of goods sold by him to them were valid and binding as between them and the Mihalovitch-Fletcher Co., and a complete settlement of their account, because they had no notice or knowledge of the alleged relationship between Winehill and the company, but acted and relied upon the apparent fact that Winehill was himself the proprietor and owner of the Anti-Trust Dis-

tilling Co. We think the evidence also shows that Rosenberg, who purchased the notes from Winehill, was an innocent purchaser for value, and without notice. Winehill had borrowed money from him from time to time prior to the transfer, and given notes therefor, signed, "G. Winehill Anti-Trust Distilling Co." The surrendering up for cancellation of these notes and the payment of $200 in money was the consideration for the transfer to Rosenberg by Winehill of the notes given by the plaintiffs. There is no evidence that Rosenberg had at the time of the transaction any notice or knowledge that the Mihalovitch-Fletcher Co. had or claimed any interest in the notes in question, or that Winehill was doing business for them, or in any way connected with them. A contention is made that, because Rosenberg did not testify directly that in dealing with Winehill he relied upon the fact that he was doing business under the name of the Anti-Trust Distilling Co., he is not an innocent purchaser. The evidence is that Rosenberg had known Winehill for many years, and had from time to time loaned him small sums of money; that Winehill had given him notes for the money so borrowed, signed, "G. Winehill Anti-Trust Distilling Co.," and there was nothing in the transaction to lead Rosenberg to think that they were not genuine, or that Winehill was not the person he represented himself to be. The Mihalovitch-Fletcher Co. having permitted Winehill, according to their own testimony, to do business under the name of the Anti-Trust Distilling Co., and having held him out to the world as such company, cannot, we think, now question the validity of his acts as against Rosenberg, who dealt with him in good faith, without notice or knowledge of the alleged relationship between him and them.

2. The point is made that the notes given by the plaintiffs in payment for goods sold and delivered to them are made payable to G. Winehill and the Anti-Trust Distilling Co., and therefore Winehill alone could not assign and transfer them. The rule of law seems to be that, where a promissory note is made payable to two persons, one cannot assign the whole, or even his own moiety, but it can only be transferred by the joint indorsement

of the two payees: *Smith* v. *Whiting,* 9 Mass. 333; *Johnson* v. *Magnum,* 65 N. C. 146; *Ryhiner* v. *Feickert,* 92 Ill. 305 (34 Am. Rep. 130) ; *Wood* v. *Wood,* 16 N. J. Law, 428.

3. The notes in question, however, were not made payable to two persons. Winehill was doing business, as the evidence shows, under the name of G. Winehill Anti-Trust Distilling Co. The notes were so made payable. Winehill and the Anti-Trust Distilling Co. were, therefore, for the purpose of these notes, in legal effect, one and the same. The notes were in favor of Winehill, and could be assigned by him: *Bryant* v. *Eastman,* 7 Cush. 113; *Medway Cotton M'fty* v. *Adams,* 10 Mass. 360.

The judgment of the court below is affirmed.          AFFIRMED.

Argued 11 January, decided 30 January, 1905.
### YOUNG *v.* STICKNEY.
79 Pac. 345.

EFFECT OF TENDER AS AN ADMISSION OF TRUTH OF COMPLAINT.

1. Under Section 532, B. & C. Comp., providing for a written offer by defendant to allow a certain judgment to be entered against him, which must be accepted within a stated time, or it shall be deemed withdrawn, in which event evidence thereof shall not be received at the trial, such an offer is not, after failure to accept it, an admission at all, and the case stands as though no offer had been made.

PLEADING PERFORMANCE OF CONTRACT—WAIVER—ALLEGATIONS AND PROOF.

2. In an action to recover for a breach of a contract plaintiff must show whether he relies on a compliance with the contract on his part or on a waiver of compliance by defendant, and whichever is pleaded must be proved, under the rule that allegations and proofs must correspond.

WAIVER OF OBJECTION OF DEFECT OF PARTIES.

3. An objection because of defect of parties must be made at the first opportunity after the facts become known to the opposing party, or it will be waived; for example, when the defect first became known through the cross-examination of plaintiff, the objection was waived by waiting until after the return of the verdict to suggest it.

From Clackamas: THOMAS A. McBRIDE, Judge.

Statement by MR. JUSTICE MOORE.