Submitted on briefs October 23, affirmed December 11, 1917.

## ROTHCHILD BROTHERS *v.* KENNEDY.*

### (169 Pac. 102.)

**Sales—Action for Price—Answer—Construction—Statutes.**

1. An averment in an answer that plaintiff supplied defendant as trustee with the goods with the understanding and with positive agreement that goods were to be paid for *pro rata,* and that the defendant was not bound nor held personally, and was only liable as such trustee for *pro rata* share of assets of the business, when liberally construed, as provided by Section 85, L. O. L., was a claim by defendant to be entirely exempt, and that plaintiff was to look to the trust estate entirely for the purchase price.

**Appeal and Error—Weight of Evidence—Questions for Jury.**

2. The verdict of a jury forecloses debate about the weight of the evidence.

**Assignments for Benefit of Creditors — Purchases by Trustee — Liability.**

3. Where a business is transferred to one in trust, with agreement to purchase goods and to keep the business going and pay off creditors, the trustee has power to purchase goods and bind the trust estate therefor.

**Principal and Agent—Selling Agent—Conditions of Purchase.**

4. Where a trustee of a business gives an order for goods to an agent, and it is agreed that he will not be bound personally, the principal is bound by such condition, although in the absence of such condition the trustee would be personally liable; it being the duty of the agent to transmit the condition along with the order.

   [As to when beneficiaries are bound by the acts of trustees in contravention of their trusts, see note in 63 Am. St. Rep. 467.]

**Sales—Persons Liable—Evidence.**

5. Although an agent did not have authority to sell goods below listed price, evidence of a conversation between the purchaser, trustee

---

*On extent of authority conferred on traveling salesman, generally, see note in 18 L. R. A. 663.        REPORTER.

of a business, and such agent as to seller looking only to a *pro rata* share of the assets for the purchase price, was competent to show that the sale was to the buyer as trustee, and not as an individual. (Mr. Chief Justice MCBRIDE, Mr. Justice MOORE and Mr. Justice MCCAMANT dissenting.)

From Jackson: FRANK M. CALKINS, Judge.

In Banc.    Statement by MR. JUSTICE HARRIS.

This is an action to recover money for goods, wares and merchandise alleged to have been sold to the defendant. William Carns owned a saloon. He incurred considerable indebtedness. One of the creditors attached the saloon. The attaching creditor was paid and Carns conveyed the saloon to W. M. Kennedy as trustee, and the latter agreed to conduct the business "in the usual way," and out of the proceeds derived from the business to pay the expense of operating the saloon, to pay the indebtedness already incurred and to account to Carns for any surplus that might remain. The trust agreement provided that Kennedy "shall be entitled * * to purchase such new stock as may be necessary to keep said business a going concern." Rothchild Brothers was a corporation engaged in the wholesale liquor business. Felix Cohn was a traveling salesman for Rothchild Brothers. Cohn had authority to solicit orders and transmit them to his principal and the latter had the right to determine whether to accept the orders and ship the goods. The plaintiff relied "to a great extent" upon investigations made by Cohn concerning the credit of customers. Cohn was empowered to collect moneys for the corporation. Kennedy gave orders to Cohn for liquors from time to time and the latter transmitted the orders to the plaintiff and it filled the orders by shipping the goods to Kennedy. The plaintiff received part payment for the liquors shipped by it and

is now prosecuting this action against Kennedy as an individual on the theory that he is personally liable for the goods which it is admitted were sold and delivered by the plaintiff. The defense interposed by Kennedy is that he bought the goods in his capacity as trustee only and upon an agreement exempting him from personal liability. The defendant pleads his defense in the following language:

"That the plaintiff herein in common with other creditors who supplied goods, liquors, cigars, etc., to keep and maintain said business as such going concern, fully understood that the defendant was trustee of said going concern, fully understood that the defendant was trustee of said saloon business for said Carns and said creditors and supplied such goods, liquors, etc., to said defendant as such trustee with the full and complete understanding and with the positive agreement to and with said defendant that the goods and liquors so supplied were to be paid for *pro rata,* and that the defendant was not bound nor held personally and was only liable as such trustee, and only to the extent of the *pro ratio* share of the proceeds thereof to be disbursed and paid by the defendant to the plaintiff *pro ratio,* share and share alike as other creditors thereof as aforesaid; that said sum of $321.23 sought to be recovered in said complaint is the unpaid balance as aforesaid and defendant does not owe the same or any part thereof."

The verdict of the jury was for the defendant and the plaintiff appealed from the consequent judgment.

AFFIRMED.

For appellant there was a brief submitted by *Mr. Porter J. Neff.*

For respondent there was a brief over the names of *Mr. W. E. Phipps* and *Mr. W. E. Crows.*

MR. JUSTICE HARRIS delivered the opinion of the court.

At the trial the court permitted the defendant to testify, over the objection of plaintiff, that he had entered into an agreement with the traveling salesman, Felix Cohn, to the effect that the defendant was not to be liable for the purchase price of the goods sold, "but that plaintiff should accept in payment therefor its *pro rata* share with other creditors of the funds realized by the trust estate of which defendant was trustee." At the close of the testimony the plaintiff moved for a directed verdict "on the ground that Cohn has no implied authority to make such an agreement, and that it was not, therefore, bound thereby."

The motion for a directed verdict was overruled, and when charging the jury the court gave the following instruction:

"The defendant, Cohn, was authorized under the evidence here to solicit orders and to transmit them to his house, and that the house thereupon was to determine whether or not they should be accepted and the goods shipped, and it was his duty to transmit those orders as they were given to him with the condition and limitation, and if there was a condition that the goods were to be shipped to Kennedy as trustee, and that he wasn't to be personally responsible, but was to *pro rata* with the other creditors with this plaintiff, it was the duty of this agent to transmit that condition with the order to his principal, and if he failed to do that his knowledge of the conditions would be imparted to his principal, so that is the reason I have denied the motion for a directed verdict."

The assignments of error are predicated upon the admission of the evidence of defendant, the ruling on a motion for a directed verdict and the quoted instruction.

1. It will be necessary at the very outset of the discussion to construe the language used by the defendant in his answer, because the argument is made that the only way in which Kennedy could escape individual responsibility was by making an express agreement that the *plaintiff would rely for payment solely upon the trust estate;* that a fair and legitimate construction of the language quoted from the answer means that the defendant claims that as trustee he was personally liable to the plaintiff for a *pro rata* share of the trust estate; and that, therefore, since the answer does not allege that it was expressly agreed that the plaintiff would rely solely upon the trust estate, the defendant is personally liable for the payment of the goods sold by plaintiff. This argument impliedly admits that the judgment of the trial court should be affirmed if the answer avers that it was agreed that the plaintiff would look solely to the trust estate for payment, because the whole point of the argument is that the answer contains no averment that the plaintiff would look for compensation solely or at all to the trust estate. While the evidence for the plaintiff contradicted the testimony received for the defendant, there was nevertheless evidence to the effect that it was agreed between Cohn and Kennedy that the latter would not be liable personally.

2. The verdict of the jury forecloses debate about the weight of the evidence.

The Code prescribes the rule of construction which governs us, for it is said in Section 85, L. O. L., that:

"In the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view of substantial justice between the parties."

Turning now to the quoted portion of the answer which is to be construed it will be noticed that the paragraph opens by saying that the plaintiff and the other creditors fully understood that the defendant was trustee of the saloon business for Carns; and it then continues with the averment that the plaintiff supplied goods to the defendant

"as such trustee with the full and complete understanding and *with the positive agreement* to and with said defendant that the goods and liquors so supplied were to be paid for *pro rata,* and *that the defendant was not bound nor held personally* and was only liable as such trustee."

Here is a plain and unambiguous statement that it was agreed that defendant was not to be held personally at all, but that he should only be liable in his capacity as trustee and even in that capacity he was only to be liable "to the extent of the *pro ratio* share of the proceeds" derived from the Carns saloon business. At no time during the trial or on this appeal was it contended or even suggested by counsel that the answer meant that it was agreed that Kennedy was only to be liable personally to the extent of a *pro rata* portion of the proceeds of the business; but, upon the contrary, the cause was tried in the *nisi prius* court by both counsel and judge on the theory that the answer alleged that it was agreed that Kennedy would be exempted from liability entirely.   When arguing the motion for a directed verdict counsel for plaintiff addressed the court thus:

"The vital question in this case is whether or not there was an express contract entered into at the time of the sale whereby Mr. Kennedy—whereby it was agreed that Mr. Kennedy should not be liable for goods he had then and there purchased and that, may it

please your Honor, is the question to which I desire to address myself in this action.''

In his charge, the court repeatedly told the jury that the defendant's position was that the goods were ordered with the distinct understanding that he was not to be personally liable, and that the position of the plaintiff was that there was no agreement that defendant was not to be liable. Furthermore, the court instructed the jury that the burden was upon the defendant to establish ''that he gave the order to pay as trustee and that the distinct understanding between the plaintiff and himself that he wasn't to be personally liable.'' Moreover, no exception to any part of the charge to the jury was predicated upon the theory that the defendant had alleged in his answer that his personal liability was limited to a *pro rata* share of the trust estate. The answer alleges that the plaintiff and defendant agreed that he was not to be liable personally at all, but that he was only to be liable as trustee and his liability as trustee was limited to a *pro rata* share of the trust estate. This allegation is only one way of saying that the plaintiff agreed to look solely to the trust estate for payment, and the trial was conducted by all parties on the assumption that such was the meaning of the answer. The defense interposed by Kennedy was sufficiently pleaded if he alleged that the goods were sold to him upon an agreement exempting him from personal liability. He did so allege in his answer; and it was not necessary for him to allege more. When construed by the rule fixed by Section 85, L. O. L., and when viewed in the light of precedents the answer must be held to mean that Kennedy claimed to be entirely exempt as an individual: *Wyatt* v. *Wyatt,* 31 Or. 531, 537 (49 Pac. 855); *West* v. *Eley,* 39 Or. 461, 464 (65 Pac. 798); *Patterson* v. *Patterson,* 40

Or. 560, 562 (67 Pac. 664); *Walker* v. *Harold,* 44 Or. 205, 207 (74 Pac. 705).

Having construed the answer and ascertained the meaning of its language it will now be necessary to determine whether Kennedy can avail himself of the defense that he ordered the goods upon an agreement exempting him from personal responsibility. The plaintiff contends that even though it be conceded that Cohn and Kennedy agreed that the latter should not be liable personally, nevertheless, the plaintiff is not bound by such agreement because it did not have knowledge of the agreement when it shipped the goods and Cohn as agent had no authority to make such an agreement for the plaintiff. The question for decision is whether Cohn had authority to receive orders for goods from Kennedy as trustee with the understanding that the latter should be exempted from personal liability.

It was Cohn's business to solicit orders and he acted within the scope of his agency when he solicited and obtained orders from customers, whether such customers were individuals or otherwise. He acted within the scope of his agency when he solicited orders from a corporation or from a partnership or from a person acting in a representative capacity or from a person acting for himself individually; and, hence, Cohn did not exceed his authority if he solicited and obtained orders from Kennedy as an individual or from Kennedy as a representative. Kennedy defends by saying that the goods were purchased by him solely in his capacity as trustee with an agreement exempting him from personal liability.

3–5. It must be conceded that even though Kennedy purchased the goods for the benefit of the trust estate he would be personally liable in the absence of an agreement exempting him from liability: 39 Cyc. 333.

The main question for decision cannot involve any inquiry concerning the authority of Kennedy to purchase the goods sold by the plaintiff, for the trust agreement expressly conferred power upon him to purchase such new stock as was necessary to keep the business a going concern and he therefore was empowered to purchase the goods and to bind the trust estate by his promise as trustee to pay for the goods. Kennedy exercised his authority and by his promise did bind the estate to pay for the goods sold by the plaintiff. Cohn had a right to deal with Kennedy solely as trustee as distinguished from Kennedy personally and in dealing with Kennedy as trustee he had a right to agree that he was not dealing with Kennedy personally and to stipulate that the orders for goods given to him were given to him and received by him as the orders of Kennedy as trustee only. If Cohn solicited orders from Kennedy as trustee only and expressly agreed that Kennedy should only be liable as trustee and should not be liable in his personal capacity then Kennedy in his character as trustee and not Kennedy personally was the customer. If Kennedy is not liable personally then the instant action must fail because it is prosecuted against him personally.

It is not necessary to determine whether Cohn could bind his principal by agreeing to sell for prices less than those fixed by the principal; nor is it necessary to decide whether a traveling salesman can obligate his employer to allow discounts or rebates to customers. The defense is—not that Kennedy as an individual is only liable to the extent of the amount of the trust assets prorated among the creditors; but, that he is not liable at all as an individual. The alleged stipulation relative to prorating the assets is a component part of the averred agreement with Kennedy as trustee. To

decide that Cohn had authority to solicit an order from
Kennedy as trustee does not decide that Cohn could
bind his principal to agree to prorate; and, on the
other hand, to decide that Cohn could not bind his prin-
cipal to prorate does not decide that Cohn could not
accept an order from Kennedy as trustee.  But to de-
cide that Cohn could solicit and receive orders of goods
from Kennedy as trustee upon an agreement exempt-
ing Kennedy as an individual is to decide that Ken-
nedy as an individual is not liable; and such a decision
ends the instant action.  The verdict of the jury neces-
sarily involves the finding that Cohn received the or-
ders from Kennedy acting in his capacity as trustee
only with the agreement that Kennedy should be di-
vested of his character as an individual and be ex-
empted from personal liability.  The defendant was
entitled to offer evidence about the stipulation to pro-
rate the assets for the purpose of proving the defense
that the orders for the goods were given by Kennedy
as trustee and for the purpose of showing that it was
agreed that Kennedy did not give the orders as an in-
dividual.  Evidence of the conversation about prorat-
ing the assets of the trust estate was competent to go
to the jury for whatever it might have been worth in
deciding the ultimate fact of whether or not the goods
were ordered by Kennedy acting solely as trustee.

If it be assumed, without deciding, that a sale to a
trustee as such involves the risk of being obliged to
prorate with other creditors, on the theory that if the
trust estate is insufficient to pay all the debts the law
will compel the creditors to prorate, then the stipula-
tion entered into between Cohn and Kennedy with ref-
erence to prorating did not change the rights of the
parties in the least for they only agreed to do what the
law would compel them to do even though they had

been silent upon the subject. It argues nothing to say that an order from Kennedy as trustee involves the contingency of being compelled to accept less than the price for which the principal authorized the commercial traveler to quote to solicited customers. Exactly the same result might follow when goods are sold to an individual, a partnership or a corporation. In the instant case Cohn did not quote an authorized price and then agree to make an unauthorized discount or to give an unauthorized rebate. All the goods were quoted to Kennedy as trustee and he ordered them at prices which Cohn was authorized to make to him and other customers. All the sales were ordered at authorized prices and the plaintiff is entitled in a proper action to recover the full amount of the price charged for the goods if the assets of the trust estate are sufficient to pay all debts. The salesman merely solicited a customer in the person of Kennedy clothed as a trustee and divested entirely of his character as an individual, and when such customer gave orders for goods to Cohn it was the duty of Cohn to transmit to his principal the orders as given to him by the customer Kennedy as trustee. Kennedy as an individual did not give the orders for the goods; he was not the customer. The judgment is affirmed.                      AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.

MR. JUSTICE MOORE delivered the following dissenting opinion.

I cannot concur in the conclusion reached by the majority of the court in this cause. A paragraph of the answer hereinbefore set forth contains a clause which reads:

"That the plaintiff * * supplied such goods, liquors, etc., to said defendant as such trustee with the full and complete understanding and with the positive agreement to and with said defendant that the goods and liquors so supplied were to be paid for *pro rata,* and that the defendant was not bound nor held personally *and was only liable as such trustee, and only to the extent of the pro ratio share of the proceeds thereof.*"

The words here emphasized are a summary of the language of the preceding affirmative averments of the answer on this subject and affords the latest expression of the defendant's counsel as to their interpretation of the defense interposed. The allegation that the defendant "was only liable as such trustee," if unqualified, would mean that Kennedy was personally liable for the payment of the entire consideration of the goods which he purchased from the plaintiff, even in his representative capacity: Perry, Trustees (6 ed.), § 437a; 39 Cyc. 333; *Taylor* v. *Davis,* 110 U. S. 330 (28 L. Ed. 163, 4 Sup. Ct. Rep. 147); *Ogden City St. Ry. Co.* v. *Wright,* 31 Or. 150 (49 Pac. 975); *Connally* v. *Lyons,* 82 Tex. 664 (18 S. W. 799, 27 Am. St. Rep. 935); *Roger Williams Nat. Bank* v. *Groton Mfg. Co.,* 16 R. I. 504 (17 Atl. 170). The averment that the defendant "was only liable as such trustee" is limited, however, by the phrase "and only to the extent of the *pro ratio* share of the proceeds," thus making the concluding clause of that part of the answer mean that Kennedy was not responsible for the payment of any sum beyond the *pro rata* share of the proceeds, but to that extent he was personally liable.

That the trust agreement expressly authorized Kennedy to purchase new stock is unimportant, for he was directed to continue the management of the saloon and that grant of general power necessarily carried with

86 Or.—37

it the right to purchase such reasonable amount of liquors, cigars, etc., as were required for that purpose. The statement in that part of the answer quoted, that, "The plaintiff herein * * fully understood that the defendant was trustee of said such going concern, fully understood that the defendant was trustee of said saloon business for said Carns and said creditors," is immaterial for if Kennedy proclaimed to every person whom he saw that he was trustee and authorized to maintain the saloon as a going concern, the announcement would not relieve him from personal liability upon any contract that he might make "as trustee" unless there was an express agreement that he should be exempted from accountability.

Another paragraph of the answer, referring to the time between June 19, 1912, when Kennedy was appointed trustee and February 25, 1915, when he was discharged, reads:

"That during said interim, this defendant as such trustee purchased from this plaintiff liquors, goods, wares and merchandise of the value of $937.77, and paid out and disbursed said plaintiff therefor the full sum of $616.54, which was *pro ratio* the amount paid and disbursed to other creditors of said defendant as such trustee for the goods so supplied to keep and maintain said business as such going concern."

Construing this paragraph in connection with the one hereinbefore quoted, it will be seen that these averments are to the effect that pursuant to the terms of an agreement made with Cohn for his principal, though the defendant "as trustee" was never personally liable for more than a *pro rata* share of the value of the goods which he purchased from the plaintiff in order to continue the saloon business, he was not when the answer was filed, indebted to the corporation in any

sum because he had paid it the amount due under the terms of the contract.

This action was brought to recover the difference between $937.77, the value of the goods sold and delivered, and $616.54, the sum paid on account thereof. In alluding to such remainder, a clause of the answer reads:

"That the said sum of $321.23 sought to be recovered in said complaint is the unpaid balance as aforesaid, and defendant does not owe the same or any part thereof."

An ample construction of these averments induces the conclusion, which is to be obtained from the final expression of the facts thus set forth, that while the defendant was "only liable as such trustee and only to the extent of the *pro ratio* share of the proceeds thereof," he was not personally liable for any sum in excess of such ratable proportion.

The most liberal interpretation of the allegations of the answer that can possibly be demanded by Section 85, L. O. L., will not justify the deduction that defendant's counsel pointed out a better writ, or suggested that the relief demanded in the complaint should be denied because this action was not brought against Kennedy "as trustee," or Carns as *cestui que trust,* thereby manifesting an intention to plead in abatement, as would seem to be indicated from the following excerpt taken from the majority opinion herein:

"If Kennedy is not liable personally then the instant action must fail because it is prosecuted against him personally."

A text-writer in commenting upon this legal principle observes:

"In a court of law the trustee is the absolute owner of the estate, and he can exercise all the powers of

ownership; he can sue and be sued, even though the *cestui que trust* is dead, and must act in many respects as the owner; and so he must be treated by others as the sole proprietor; but in equity the *cestui que trust* is the owner, and the question in equity is, how far the trustee can act without exceeding his powers, and rendering himself responsible to the *cestui que trust*": Perry, Trustees (6 ed.), § 475.

Kennedy was a trustee of an express trust: Section 29, L. O. L. As such he held the legal title to the property that had been assigned to him, and for any infringement of his right of possession or of property he could have maintained an action at law in his own name. Thus in *Trustees M. E. Church* v. *Adams,* 4 Or. 76, 89, Mr. Justice THAYER in speaking of a person so appointed, remarks:

"Adams has the legal title, and a full and complete remedy may be had without bringing any of the other parties who have participated in the transaction referred to before the court": See also *United States* v. *McCann,* 40 Or. 13, 17 (66 Pac. 274); *Wright* v. *Conservative Investment Co.,* 49 Or. 177, 179 (89 Pac. 387); *Kollock* v. *Bennett,* 53 Or. 395, 401 (100 Pac. 940, 133 Am. St. Rep. 840).

The converse of this rule is true and a trustee of an express trust, like an administrator or executor, can be sued individually on contracts made by him on a new and independent consideration: 2 Bates, Plead. Prac. Parties & Forms, 1597; 30 Cyc. 92. As the contract of sale herein was made with Kennedy after he was appointed trustee, an action at law could have been maintained against him individually: *Taylor* v. *Davis,* 110 U. S. 330 (28 L. Ed. 163, 4 Sup. Ct. Rep. 147).

The defense herein is not based upon the postulate that this action should be defeated because it was not

brought against Kennedy in his representative capacity. If an administrator, an executor, a guardian or a trustee, who is not otherwise exempted by statute (Section 575, L. O. L.), negotiates for the purchase of goods with a traveling salesman who knows that such person is acting in a representative capacity, and the merchandise so requested is sold and delivered, the transfer of the title to the goods, in the absence of any agreement to the contrary, creates a personal liability upon the part of the person giving the order to pay the full consideration for the merchandise: *Roger Williams Nat. Bank* v. *Groton Mfg. Co.,* 16 R. I. 504 (17 Atl. 170).

It has been held that if a trustee would escape personal liability upon contracts made by him in his representative capacity, he must expressly agree with the other party that the latter will rely solely upon the trust estate for the consideration of the obligation thus incurred: *Taylor* v. *Davis,* 110 U. S. 330 (28 L. Ed. 163, 4 Sup. Ct. Rep. 147). It must be conceded that a solvent merchant who possessed adequate mentality could by express agreement donate his goods to a person individually or while acting in a representative capacity, so that a delivery of the merchandise would transfer the legal title and preclude the possibility of a recovery of any part of the consideration therefor. When a commercial traveler solicits an order for the sale of goods to a trustee, an agreement that the sale is made to him individually is not distinguishable, in legal effect, from a contract to sell to him in his representative capacity, for in each character the purchaser is personally liable, in the absence of a stipulation to the contrary.

The gist of the affirmative defense herein is not that the liquors, etc., were sold and delivered to Kennedy

"as trustee" but that the plaintiff, by Cohn as agent, agreed to accept from the defendant in full satisfaction of the value of the goods delivered the *pro rata* share thereof, and that such part had been fully paid. From these averments, when substantiated, the conclusion is logically deduced that no other or further sum of money can possibly be recovered in this or any other action or suit. The defense, therefore, was not a plea in abatement but in bar and went to the merits of the entire cause of action: Perry, Trusts (6 ed.), § 873; 39 Cyc. 451. This being so, the availability of the defense must necessarily rest upon and be determined by the validity of the alleged express agreement asserted to have been made by Cohn on behalf of the plaintiff.

The part of the instruction hereinbefore quoted, which made it incumbent upon Cohn, as a commercial traveler, when receiving a request from Kennedy to purchase any of the plaintiff's goods, to forward such order to his principal is supported by reason and authority: 2 C. J. 593. Thus in *L. A. Becker Co.* v. *Clardy,* 96 Miss. 301 (51 South. 211, Ann. Cas. 1912B, 355), it was ruled that by virtue of his employment a traveling salesman was authorized only to solicit orders and transmit them to his principal, and that he could not make an absolute contract of sale unless he had had express authority to do so, or was held out as possessing such power.

I cannot, however, assent to that part of the court's charge which states in effect that if Cohn failed to transmit to the corporation the order which he received, with its restrictions and limitations, "his knowledge of the conditions would be imparted to his principal." If such a doctrine were to prevail, the precept would permit a commercial traveler, in the absence of testi-

mony tending to establish his real or apparent authority, to conclude any kind of a bargain that would be advantageous to him and thereby bind his principal in violation of the rule prohibiting him from doing so: *Johns* v. *Jaycox,* 67 Wash. 403 (121 Pac. 854, Ann. Cas. 1913D, 471, 39 L. R. A. (N. S.) 1151).

In *Dight* v. *Chapman,* 44 Or. 265, 278 (75 Pac. 585, 65 L. R. A. 793), it is said:

"The general rule is that knowledge of an agent, acquired while acting within the scope of his authority, relating to matters intrusted to him and over which his authority extends, is constructive notice to his principal. * * There are several well-recognized exceptions, however, to this general rule. * * If an agent conspire with a third party to defraud his principal, or if on his own behalf he intends to do so, the knowledge which he may obtain, and which it was his duty to disclose to his principal, will not be imputed to the latter. * * So, too, if an agent has an interest to subserve that is adverse to his principal, any knowledge that he may have acquired from a third party during the time of and relating to the matter of the agency will not be imputed to his principal."

The practice is so general that judicial notice might almost be taken that the compensation of a commercial traveler depends very much upon the amount of sales of goods which he negotiates. His personal interests would therefore prompt him to magnify, as much as possible, the volume of orders which he secured. While Cohn might have had reason to believe that full compensation would be made for the goods which Kennedy ordered, and for that reason never notified the plaintiff of the agreement, which the jury found he made, to accept a *pro rata* share of the value of the merchandise, but however this may be the agent evidently had an interest to subserve that was adverse to

his principal, and this being so his knowledge should not be imputed to the plaintiff.

In *Walsh* v. *Hartford Fire Ins. Co.,* 73 N. Y. 5, 10, Mr. Justice Andrews in discussing this subject, observes:

"The authority of an agent is not only that conferred upon him by his commission, but also, as to third persons, that which he is held out as possessing. The principal is often bound by the act of his agent in excess or abuse of his actual authority, but this is only true between the principal and third persons, who believing and having a right to believe that the agent was acting within and not exceeding his authority, would sustain loss if the act was not considered that of the principal."

The legal proposition thus announced has been sanctioned in the cases of *Connell* v. *McLoughlin,* 28 Or. 230, 234 (42 Pac. 218); *Harrisburg Lmbr. Co.* v. *Washburn,* 29 Or. 150 (44 Pac. 390); *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961); *Portland* v. *American Surety Co.,* 79 Or. 38 (153 Pac. 786, 154 Pac. 121); *Nicholas* v. *Title & Trust Co.,* 79 Or. 226 (154 Pac. 391, Ann. Cas. 1917A, 1149).

In the case at bar no evidence of Cohn's former dealings having been offered as tending to show the plaintiff had held him out as possessing sufficient authority to make such an agreement as is alleged in the answer herein, the defendant could not have been justified in believing the agent was empowered to accept a *pro rata* compensation for the goods ordered. A party undertaking to hold a principal liable for the disputed acts of an agent, must offer proof tending to establish either that requisite authority had been conferred, or conduct on the part of the principal constituting an estoppel, or his ratification of the unauthorized agree-

ment: *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111). There can be no ratification of the unwarranted act of an agent unless the principal had knowledge of the material facts relating to the transaction and approved them: 2 C. J. 476; Mechem, Agency (2 ed.), § 393; *Sorenson* v. *Smith,* 65 Or. 78, 86 (129 Pac. 757, 131 Pac. 1022, Ann. Cas. 1915A, 1127, 51 L. R. A. (N. S.) 612); *Toomey* v. *Casey,* 72 Or. 290, 295 (142 Pac. 621); *Cranston* v. *West Coast Life Ins. Co.,* 72 Or. 116 (142 Pac. 762); *United States Nat. Bank* v. *Herron,* 73 Or. 391 (144 Pac. 661, L. R. A. 1916C, 125); *Grice* v. *Oregon-Wash. R. & N. Co.,* 78 Or. 17 (150 Pac. 862, 152 Pac. 509); *Russell* v. *Erie R. Co.,* 70 N. J. Law, 808 (59 Atl. 150, 1 Ann. Cas. 672, 67 L. R. A. 433); *Lemcke* v. *A. L. Funk & Co.,* 78 Wash. 460 (139 Pac. 234, Ann. Cas. 1915D, 23). No evidence was offered tending to show the plaintiff had any knowledge that its agent had agreed to accept a *pro rata* compensation for the goods ordered by the defendant. There was, therefore, a failure on the part of the defendant to prove any authority conferred by the plaintiff upon Cohn to make such a contract as is alleged in the answer, a neglect to show that in other instances the plaintiff had held out the agent as having such authority so as to create an estoppel, and a want of proof of plaintiff's knowledge of material facts so as to constitute a ratification.

The authorities cited by defendant's counsel do not in our opinion controvert the legal principle here asserted. Thus in 31 Cyc. 1331, et seq., reference is made to the apparent scope of an agent's authority, which manifest grant of power is evidenced by the principal holding out the agent as possessing such right, or knowingly allowing him to assert that he has the requisite authority. Among the cases cited as

sustaining the text is that of *Gardner* v. *Wiley,* 46 Or. 96 (79 Pac. 341). The latter method of creating an estoppel by an inference of authority is illustrated by the decision in *Roane* v. *Union Pac. Life Ins. Co.,* 67 Or. 264 (135 Pac. 892), where a promissory note purporting to have been given by an insurance company in settlement of a claim against it by an agent who represented he had authority to execute the negotiable instrument, and there being no evidence that the claimant had any knowledge of a limitation of the agent's authority, it was held that the question of such authority was properly submitted to the jury under proper instruction in respect to the grant of power. Another case cited by defendant's counsel is that of *Golding* v. *Merchant,* 43 Ala. 705, where it was ruled that if a principal, by his declarations or conduct, authorized the opinion that he had given more extensive powers to the agent than were in fact conferred he should not be permitted to avail himself of the imposition. At page 719 of the opinion in that case it is said:

"The agency as claimed by the plaintiff was controverted, and there was evidence tending to establish it. The sufficiency of the evidence was a question for the jury under appropriate instructions from the court."

In that case testimony was received tending to show an estoppel on the part of the principal. In *Liddell* v. *Sahline,* 55 Ark. 627 (17 S. W. 705), it was decided that a general agent with power to buy might bind his principal by purchases within the scope of his authority, though in violation of specific instructions of which the seller had no notice. In that case the evidence was sufficient to be submitted to the jury on the question of the agent's authority, though transgressing particular directions of which the seller had no notice.

Of similar purport is the case of *Swinnerton* v. *Argonaut L. & D. Co.*, 112 Cal. 375 (44 Pac. 719). In *Babcock* v. *Deford & Co.*, 14 Kan. 408, it was ruled that where an agent, the actual extent of whose authority was unknown, made a sale of his principal's goods upon certain conditions within the ordinary scope of the agent's authority, the principal could not thereafter affirm the sale and reject the condition without the consent of the purchaser, even though such conditions might be outside the actual authority of the agent. At page 411 of the opinion in that case it is said:

"If the plaintiff accepted the contract of his agent, he must accept it as a whole, and cannot accept that which suits him and reject the balance. The principal is bound by the representations of his agent, bound by the contracts he makes within the apparent scope of his authority."

If the testimony in that case had disclosed that the principal, with a knowledge of all the material facts, accepted a part of the contract undertaken to have been made by his agent, such approval would have amounted to a ratification of the entire agreement, and the conclusion thus reached would have been consonant with the current of authority. The evidence on that subject as set forth in the opinion is meager. If it was intended by the use of the language employed to announce the doctrine that a ratification resulted without a knowledge of all the material facts, I cannot assent to the doctrine so asserted.

The remaining case cited by defendant's counsel is that of *Banks Bros.* v. *Everest*, 35 Kan. 687 (12 Pac. 141), where it was declared that a principal was bound by the acts of his agent within the scope of his authority, and that the principal was also responsible for

the unauthorized acts of the agent where from the evidence received it appeared that the conduct of the principal justified a party dealing with the agent, in believing he was acting within and not in excess of the authority conferred upon him. The legal principle thus announced is compatible with all the decisions on that subject.

The testimony received at the trial shows that the defendant, though trustee for Carns, was also engaged with a partner in conducting for the firm a saloon at Medford, Oregon, and that Kennedy's financial standing was such that he could, upon his own account, have secured from wholesale liquor dealers goods to the value of most any reasonable amount, and that the plaintiff had, prior to such assignment, sold and delivered goods to that firm. While Cohn may have been authorized in other instances to solicit in behalf of his principal, liquors, etc., he must necessarily have been empowered to negotiate sales of like goods to such customers as Kennedy. The implied authority of a traveling salesman is to take orders for the sale of his principal's goods, payable in cash on delivery or within a reasonable time. To hold a principal liable upon a contract alleged to have been made by his traveling salesman, whereby only a portion of the purchase price of goods might possibly be paid, in full satisfaction thereof, in the absence of any proof on the part of the purchaser that the agent possessed real or apparent authority to conclude an agreement to that effect, is to render a recovery by a wholesale house of its demand dependent upon the oral testimony of the purchasers of their goods after they are delivered.

Rules of the common law ought so to be formulated and applied by courts as generally to dispense substantial justice to all parties. However honest a com-

mercial traveler may be in soliciting orders for the sale of his principal's goods at schedule prices, even to a purchaser who is financially responsible, the actual contract to that effect which has been concluded, can be set aside and a simulated agreement substituted upon the oral testimony of purchasers after receiving the goods, without offering any testimony tending to show any real or apparent authority to consummate the counterfeit bargain, if the rule announced by the trial court is to be applied. Such practice will serve to eliminate commercial travelers, or to require that customers solicited by them subscribe their names to a written order for goods, which memorandum when accepted by wholesale houses contains all the requirements of a valid agreement, thereby excluding oral testimony tending to vary, alter or contradict the terms of the writing.

While the principal is held liable for the contracts made by his agent if he acts within his real or apparent authority, evidence thereof should be given when the power of a commercial traveler is controverted, before the principal is rendered liable. This is as far as the rule ought, in reason, to be extended, and to hold that the principal is liable when the agent did not communicate to him an offer made by a contemplated purchaser, though it was to the interest of the commercial traveler to withhold such information, is to carry the doctrine to the very limit of unreasonableness.

In my opinion errors were committed in refusing to direct a verdict for the plaintiff, and in charging the jury as stated. For these reasons the judgment should be reversed.

MR. CHIEF JUSTICE MCBRIDE and MR. JUSTICE MC-CAMANT concur in the above dissenting opinion.